UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| URSULA OGAMBA,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A., et al.,<br><br>Defendants. | No. 2:17-cv-01754-KJM-AC<br><br><br>ORDER |

Plaintiff Ursula Ogamba contends her home was wrongfully sold in a 2017 foreclosure sale. She sues her loan servicer, Wells Fargo Bank, N.A., alleging multiple violations of the California Homeowner Bill of Rights ("HBOR"), as well as state law claims. Wells Fargo moves for summary judgment on each of Ogamba's claims. Mot., ECF No. 52. Ogamba opposes, Opp'n, ECF No. 58, and Wells Fargo replies, Reply, ECF No. 63. As explained below, the court GRANTS Wells Fargo's motion in full.[1]

/////

/////

---

[1] On the morning of December 7, 2018, shortly before the court was set to hear this motion, an assistant for Ogamba's counsel advised the court that counsel was ill, would not attend the hearing and wished to submit the motion on the papers or reschedule the hearing. Given that the court had prepared for hearing, and in light of counsel's willingness to submit on the papers, the court held the hearing with only Wells Fargo's counsel in attendance. The court's motion hearing minutes confirmed the court held hearing with only Wells Fargo present, ECF No. 66, and Ogamba's counsel has not objected or sought to supplement the record.

1

I.    BACKGROUND

The following facts are undisputed unless otherwise indicated. *See* ECF No. 59 (Ogamba's responses to Wells Fargo's statement of undisputed material facts).

In March 2007, Ogamba and her then-husband, Valentine Ogamba, refinanced their mortgage for the property at issue, located at 1194 Palomar Drive, Tracy, California, obtaining a $536,000 loan from World Savings Bank, FSB. UMF 1. The loan was memorialized in a promissory note and secured by a deed of trust. UMF 2. Wells Fargo, Worlds Savings' successor in interest, granted the Ogambas a loan modification in January 2009. UMF 3−4. In 2011, Ogamba lost her job and entered into a program that allowed her to pay half the mortgage for a year, after which her loan would be modified. Ogamba Decl., ECF No. 60, ¶¶ 5−8. In June 2012, Mr. Ogamba transferred all interest in the property to Ms. Ogamba. UMF 5.

Ogamba found employment in 2013, but her job required her to maintain an apartment in Coalinga in addition to her Tracy home. Ogamba Decl. ¶¶ 9−10; Ogamba Dep., Def. Ex. 1, Pl. Ex. 1, at 12:22−23[2] ("I was living in two places, and I was paying for two places."). In January 2014, after defaulting on the loan on her Tracy home, Ogamba obtained a second loan modification. UMF 6−7. In August 2015, Ogamba again defaulted. UMF 8. The parties agree Ogamba never cured the default, but Ogamba contends she actively sought a "foreclosure prevention alternative." UMF 9; Resp. to UMF 9; *see* Ogamba Decl. ¶ 12 (stating Ogamba sought further modification at unspecified point in 2015 but Wells Fargo refused to modify her loan).

Wells Fargo recorded a notice of default on April 20, 2016. UMF 9; Def. Ex. D. Ogamba sued Wells Fargo in in a prior action in San Joaquin County Superior Court on May 4, 2016. UMF 10. That case was removed to this court, where it was assigned case number 2:16-cv-01923-KJM-AC. *Id.* On August 4, 2016, Wells Fargo recorded a notice of trustee's sale. UMF 9; Def. Ex. E. In a letter dated December 22, 2016, and addressed to Mr. and Ms. Ogamba, Wells Fargo stated: "A review of your loan has been pending for a considerable period of time and we

---

[2] As required under the court's Local Rules, counsel lodged the complete Ogamba deposition with the court. *See* E.D. Cal. R. 133(j). The court cites portions of Ogamba's deposition not included in the excerpts the parties provided in their exhibits as necessary.

have not yet received all of the required documentation from you. Because you have not provided the required documentation, we are unable to offer you assistance options." Def. Ex. H. The parties settled their suit on February 10, 2017 and Wells Fargo agreed to review Ogamba for a new loan modification. UMF 11−12; Def. Ex. 5 (settlement agreement). In that agreement, Wells Fargo required Ogamba to submit all required information and documentation for a loan modification review within fourteen days of executing the agreement, after which Wells Fargo would notify Ogamba of any required additional documentation or information, which Ogamba was required to provide within seven days absent a written extension. UMF 12; Resp. to UMF 12; Def. Ex. 5 ¶¶ 4.2−4.3.

On March 7, 2017, Ogamba faxed a loan modification application to Wells Fargo, attesting under penalty of perjury to the truth of all statements in her application. UMF 14−15. She identified her monthly gross income as $24,567.26, her monthly expenses as $11,023.75, and her liquid or near-liquid asset as $31,605.57. UMF 17−19; Def. Ex. I; Ex. 1 at 28−38.[3] The latter included more than $19,000 in checking and savings accounts. UMF 19.

On March 10, 2017, Wells Fargo "Home Preservation Specialist" Nicholas Allen sent the Ogambas a letter thanking them "for reaching out to [Wells Fargo] about [their] mortgage" and instructing them to submit a mortgage assistance application no later than April 2, 2017. Def. Ex. J.

On March 31, 2017, Ogamba submitted a new modification application, providing the same income, expense and asset figures provided in her March 7, 2017 application. UMF 20−21; Def. Ex. K; Def. Ex. 1 at 39−50. Unlike her March 7, 2017 application, Ogamba noted she "got a new job" that she had "not started yet," stating, "as soon as I start, I let you know." Def. Ex. K at 87. Wells Fargo claims Ogamba included a hardship letter with her March 7 application, stating she worked for Lyft as an independent contractor and owned a "Tropical business which I sell [*sic*] from my Garage," though the hardship letter is included in only one of the two versions

---

[3] With the exception of deposition transcripts, which the court cites using internal page and line numbers, and Ogamba's document production, Def. Ex. 6, which the court cites using Bates numbers, the court cites to CM/ECF pagination.

3

of Ogamba's March 31 application Wells Fargo provides to the court. UMF 22; *compare* Def. Ex. K *with* Def. Ex. 1 at 48[4]; *see also* Ogamba Dep. at 58:18−59:3 (Ogamba testifying she has run a "tropical food" business from her garage continuously since 2014). Ogamba contends the hardship letter "is not in reference to the March 31 application," but does not explain what the hardship letter was in reference to or whether it was sent to Wells Fargo. Resp. to UMF 22.

On April 17, 2017, Wells Fargo sent the Ogambas a letter "follow[ing] up . . . on your recent request for mortgage assistance" and requesting additional information to be received by Wells Fargo by May 7, 2017. UMF 23; Def. Ex. L.

In an April 20, 2017 letter, again addressed to both Mr. and Ms. Ogamba, Wells Fargo acknowledged it had received Mr. Ogamba's signed quit claim deed, referring to Mr. Ogamba as "your ex-husband," but explained that under "investor guidelines, even with an executed Quit Claim Deed, we still require signatures from all borrowers on the Mortgage Assistance Application (MAA) and if approved, we will require signatures from both borrowers on the final modification documents." *See* UMF 24; Def. Ex. 1 at 80−81.

On May 17, 2017, Wells Fargo sent the Ogambas another letter stating, "A review of your loan has been pending for a considerable period of time and we have not yet received all of the required documentation from you. Because you have not provided the required documentation, we are unable to offer you assistance options." UMF 25; Def. Ex. M. On June 6, 2017, Wells Fargo notified the Ogambas it would "not mov[e] forward with a review of your mortgage for assistance . . . . based [on] . . . your mortgage history, the recent information you provided us, and the current circumstances surrounding your mortgage." UMF 26; Def. Ex. N. The letter advised, "If your mortgage has been or will be referred to foreclosure, that process may move forward now." Def. Ex. N. Wells Fargo sent an identical letter to the Ogambas dated July 3, 2017. UMF 27; Def. Ex. O.

---

[4] Wells Fargo did not explain the discrepancy between the two copies of Ogamba's March 31 application. The court notes Exhibit K, which does not include the hardship letter, bears a fax verification report at the top that skips from "10/37" to "12/37," Def. Ex. K at 90−91, while Exhibit 1 includes the hardship letter between these pages with a fax verification report at the top stating, "11/37," Def. Ex. 1 at 48.

4

According to Ogamba, on an unspecified date in June 2017, Wells Fargo told her it would consider her for a loan modification if she submitted the application with Mr. Ogamba's signature. Ogamba Decl. ¶ 19. Ogamba submitted another modification application on July 8, 2017, this time including Mr. Ogamba's information and his signature as a co-borrower. UMF 28; Def. Ex. P. The application included the same income, expense and asset figures contained in Ogamba's two March 2017 applications. UMF 29. Ogamba also submitted profit and loss statements[5] indicating she earned a monthly net income of $46,533.00 from her tropical food business for the period April 1, 2017 through June 30, 2017 and a net income of $24,079.45 from her work as a Lyft independent contractor for the same period. UMF 30; Def. Ex. 1 at 97−98. Wells Fargo contends the financial information Ogamba provided in her July 8, 2017 application was inaccurate and has not been substantiated by Ogamba in discovery. UMF 32, 43−44. Ogamba counters that the monthly income she provided in her application was "too low" and did not account for the income of her six children, all of whom work. Resp. to UMF 32; Ogamba Dep. at 151:4−152:15.[6] Regarding the net income she reported from her tropical food business and Lyft, Ogamba acknowledged under oath that the figures were incorrect, testifying that she looked at the

---

[5] The profit and loss statements are not included with the July 2017 application defendants provide at Exhibit P. They are instead attached to Ogamba's deposition. *See* Def. Ex. 1 at 97−98. Ogamba does not dispute that she submitted this statement to Wells Fargo as part of her July 2017 application.

[6] It is unclear to the court why, having admitted the information was "too low," Ogamba disputes it was inaccurate. *See* Resp. to UMF 32 ("Ms. Ogamba's deposition testimony reflects confusion but does not prove her application was inaccurate. . . . . This exchange does not constitute proof that Ms. Ogamba listed inaccurate financial information on her application, but rather that due to her large household size, the monthly income is likely surprisingly high."); *see also* Opp'n at 16 ("[I]f Plaintiff's documents did in fact contain inaccurate information (which is disputed), any inaccuracies reflected an underestimation of Plaintiff's finances.") (emphasis and citation omitted). Ogamba also represents that Wells Fargo never specifically requested materials substantiating the figures provided in her July 2017 application and states that her "document production contains multiple materials that substantiate her financial information, such as verification letters of contribution from her children." *See* Resp. to UMF 43; Def. Ex. 6 (Ogamba's document production in its entirety). Ogamba does not, however, specifically identify any of those documents in the record before the court, nor she explain how those documents support figures she provided in her application. She also claims that many of her documents "were displaced when she lost her home in the foreclosure." Resp. to UMF 43.

three-month reporting period "kind of like a yearly" and because she "was doing part-time with Lyft . . . [she] was looking at this like if [she] d[id] it full-time." UMF 32; Ogamba Dep. at 98:11−100:9.

The trustee's sale of Ogamba's home was scheduled for July 19, 2017. *See* UMF 45. Ogamba claims that on July 10, July 17 and July 18, 2017, she submitted "supplemental application materials" requested by Wells Fargo. Ogamba Decl. ¶ 24; Reply at 3 (arguing this portion of Ogamba's deposition is hearsay and violates best evidence rule). According to Ogamba, on the evening of July 18, 2017, at approximately 8:00 p.m., she spoke to a female Wells Fargo representative who instructed her to submit her IRS 45016-T[7] with corrected information, and to also submit a new nonoccupancy bill for Mr. Ogamba. UMF 34−35. The representative told Ms. Ogamba that "these two documents were the only two items needed" and "if [she] supplied the requested materials on July 18, 2017, Wells Fargo would postpone the sale of [her] home." Ogamba Decl. ¶¶ 26−27. Wells Fargo has no record of this phone call. UMF 36; *see* Smith Decl., ECF No. 52-1, ¶ 26 ("Based on my review of system notes, Wells Fargo does not have a record of a telephone call placed to or received from the Borrowers at or abut 8:00 p.m. PST on July 18, 2017"). Wells Fargo also notes Ogamba's sworn discovery responses never disclosed this "purported promise," Reply at 3. Ogamba claims she faxed the requested documents to Wells Fargo on July 18, 2017 and "[t]he fax was reported as having been successfully transmitted." Ogamba Decl. ¶¶ 29−30; Objs., ECF No. 65, at 2 (Wells Fargo disputing this portion of Ogamba's declaration as hearsay, violation of best evidence rule and sham testimony). Ogamba has not produced the documents she claims she faxed to Wells Fargo on July 18. UMF 37−41. Her production does include a handwritten fax cover sheet dated July 18, 2017, indicating seven pages would be sent to "Richard" at Wells Fargo. UMF 39; Def. Ex. 6 at OGAMBA_000129. There is no verification report for this fax sheet. *See* UMF 40−41 (noting transmission verification report immediately following cover sheet in Ogamba's document production dated January 10, 2013 and only other verification reports in production dated July 8 and July 10, but not July 18); Resp. to UMF 40 (admitting no verification

---

[7] Neither party describes this document, though, elsewhere in the record, correspondence from Wells Fargo describes an IRS 4506-T as a "Request for Tax Transcript." Def. Ex. L.

6

report for purported July 18, 2017 fax).  In short, Ogamba concedes her declaration is the only evidence of a July 18 phone call and the fax she purportedly sent that night.  Resp. to UMF 37.

On July 19, 2017, Wells Fargo determined Ogamba's application was incomplete.  UMF 42; Resp. to UMF 42 (Ogamba arguing Wells Fargo "ignore[d]" additional documents she sent on July 18 in deeming application incomplete); Def. Ex. Q (Wells Fargo internal notes stating, "file is ineligible for activation into loss mitigation review due to the following reason(s).  More information needed.").  In a July 19, 2017 phone call, before transferring Ogamba to a specialist to discuss the status of her modification application, a Wells Fargo representative confirmed the foreclosure sale of the home was scheduled for that day.  UMF 48−49.[8]  Ogamba's home was sold in a foreclosure sale on July 19, 2017.  Request for Jud. Not., ECF No. 57, Ex. B (trustee's deed upon sale recorded July 25, 2017).

## II. LEGAL STANDARD

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[9]

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986).  In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

---

[8] A recording of the July 19 phone call is provided at Wells Fargo's Exhibit R.

[9] Rule 56 was amended, effective December 1, 2010.  However, it is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged."  Fed. R. Civ. P. 56, Notes of Advisory Comm. on 2010 amendments.

support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts"). Moreover, "the requirement is that there be no genuine issue of material fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247-48 (emphasis in original).

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

A court may consider evidence as long as it is "admissible at trial." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). "Admissibility at trial" depends not on the evidence's form, but on its content. *Block v. City of L.A.*, 253 F.3d 410, 418-19 (9th Cir. 2001) (citing *Celotex Corp.*, 477 U.S. at 324). The party seeking admission of evidence "bears the burden of proof of admissibility." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir. 2002). If the opposing party objects to the proposed evidence, the party seeking admission must direct the district court to "authenticating documents, deposition testimony bearing on attribution, hearsay exceptions and exemptions, or other evidentiary principles under which the evidence in question could be deemed admissible . . . ." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385-86 (9th Cir. 2010). However, courts are sometimes "much more lenient" with the affidavits and documents of the party opposing summary judgment. *Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240, 1243 (9th Cir. 1979).

The Supreme Court has taken care to note that district courts should act "with caution in granting summary judgment," and have authority to "deny summary judgment in a case where there is reason to believe the better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 255. A trial may be necessary "if the judge has doubt as to the wisdom of terminating the case before trial." *Gen. Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d 1500, 1507

(9th Cir. 1995) (quoting *Black v. J.I. Case Co.*, 22 F.3d 568, 572 (5th Cir. 1994)). This may be the case "even in the absence of a factual dispute." Rh*eumatology Diagnostics Lab., Inc v. Aetna, Inc.*, No. 12-05847, 2015 WL 3826713, at *4 (N.D. Cal. June 19, 2015) (quoting *Black*, 22 F.3d at 572); *accord Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1285 (11th Cir. 2001).

III. DISCUSSION

    A.    HBOR Dual Tracking Claim

        1.    Dual Tracking & Material Change in Financial Circumstances

HBOR bars servicers from moving forward with foreclosure proceedings while a borrower's loan modification is under review, a practice referred to as "dual tracking." Cal. Civ. Code § 2923.6(c) (2017); *id.* § 2924.11(a) (2018); *id.* § 2923.6 (2019). When Ogamba submitted her July 2017 modification application and when Wells Fargo conducted the trustee's sale of her home, former HBOR section 2923.6(c), as relevant here, prohibited a servicer from conducting a trustee's sale while a borrower's "complete application for a first lien loan modification" was pending. Cal. Civ. Code § 2923.6(c) (2017). That prohibition remained in place until the servicer either determined in writing that the borrower was ineligible for a modification and the borrower's 30-day appeal period expired, the borrower did not accept an offered modification within 14 days, or the borrower accepted and defaulted on or breached a modification. *Id.* § 2923.6(c)(1)−(3) (2017). Under section 2923.6(g), however:

> In order to minimize the risk of borrowers submitting multiple applications for first lien loan modifications for the purpose of delay, the mortgage servicer shall not be obligated to evaluate applications from borrowers . . . who have been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of this section, unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer.

Cal. Civ. Code § 2923.6(g) (2017).

Section 2923.6 was repealed effective January 1, 2018 and subsection (c) was substantially reenacted in section 2924.11(a) while subsection (g) was omitted from that reenactment. *See* Cal. Civ. Code § 2924.11 (2018). As of January 1, 2019, section 2924.11(a) was repealed and substantially reenacted in section 2923.6(c), which is identical to its 2017 version,

9

section 2923.6(c) (2017), except it now provides that any modification application must be submitted to the "servicer at least five business days before a scheduled foreclosure sale." *Id.* ¶ 2923.6(c) (2019). The current version of section 2924.6 also restores, word-for-word, subsection (g)'s provision relieving servicers from their obligation to evaluate successive applications "unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer." *Id.* § 2923.6(g) (2019).

### 2. Ogamba Did Not Document a Material Change in Financial Circumstances

Wells Fargo argues Ogamba was not "entitled to another review" for a loan modification because her "July 2017 application failed to document a material change in financial circumstances," as required. Mot. at 17−18; *see* Cal. Civ. Code § 2923.6(g) (2017 & 2019) (requiring servicer to evaluate applications in which material change in financial circumstances "is documented by the borrower and submitted to the mortgage servicer"). The court agrees and finds Wells Fargo is entitled to summary judgment on this claim.

It is undisputed that Ogamba's March 7, March 31, and July 8, 2017 modification applications "contained the exact same income, expense, and asset figures . . . ." UMF 29. Because Wells Fargo evaluated and rejected Ogamba's March 2017 applications, *see* UMF 26, Wells Fargo argues it was not obligated to consider her July 8, 2017 application, as that application indisputably did not document a material change in financial circumstances that occurred after Ogamba's March applications, Mot at 17−18.

Ogamba contends she need not show "a material change in circumstances between March and July of 2017" because her "March 2017 application was not denied, Defendant simply found it to be incomplete due to [Mr.] Ogamba's . . . refusal to sign documents." Opp'n at 14.[10] In

---

[10] Elsewhere, Ogamba suggests, perhaps unintentionally, that she did in fact experience a material change in financial circumstances "in June 2017," and then "began applying for a loan modification with [] Wells Fargo." *See* Opp'n at 11 ("Specifically, in June 2017, after experiencing a material change in financial circumstances, Plaintiff began applying for a loan modification with Defendant Wells Fargo."); UMF 13; *see also* ECF No. 47 at 7:7−10:19 (transcript of hearing on Wells Fargo's first motion to dismiss with plaintiff's counsel representing he would amend complaint to allege material change in financial circumstances if possible in response to court's noting no material

other words, Ogamba asks the court to view her three March and July applications as a single, continuously pending application that was never denied. Because the dual tracking prohibition applies only to "a complete application," the distinction Ogamba attempts to draw between a "denied" application and an "incomplete" application is unclear. *See* Cal. Civ. Code § 29236(c) (prohibiting trustee's sale while "a complete application" is pending); *see also id.* at § 2923.6(h) ("[A]n application shall be deemed 'complete' when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer."); *id.* § 2924.11(f) (2018).

In any event, this argument is not supported by the record. Wells Fargo's April 17, 2017 letter to the Ogambas requested multiple documents, not only Mr. Ogamba's signature, to be received no later than May 7, 2017 to allow Wells Fargo to review Ogamba's March modification application. UMF 23; Def. Ex. L. Nothing in the record before the court indicates Ogamba submitted the additional documents Wells Fargo requested, much less that she submitted the documents by the May 7, 2017 deadline. *See* Cal. Civ. Code § 2923.6(h) (2017 & 2019) ("[A]n application shall be deemed 'complete' when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer."). Specifically, Wells Fargo requested Mr. Ogamba's application and Calvin Ogamba's[11] contribution letter, IRS 4506-T form, pay stubs and proof of occupancy. Def. Ex. L. Ogamba does not claim she submitted any of these documents to Wells Fargo by the prescribed deadline. Further, her document production, which Wells Fargo provides here, includes Calvin Ogamba's monthly contribution, signed and dated July 7, 2017, Def. Ex. 6 at OGAMBA_000071, and his pay stubs dated June 2 and June 16, 2017, *id.* at OGAMBA_000091−92, and his 4506-T form signed and dated July 7, 2017, OGAMBA_000132, but none of these documents are accompanied by a declaration or any other evidence suggesting they were actually sent to Wells

---

change alleged with respect to third modification application); ECF No. 48 at 4 (order finding Ogamba sufficiently alleged July 2017 application documenting material change in financial circumstances, triggering Wells Fargo's obligation to review). Any such assertion, however, is not supported by the record.

[11] Neither party identifies Calvin Ogamba's relationship to Ogamba.

Fargo; according to the dates appearing on the face of the documents, they could not have been sent by the May 7, 2017 deadline. *See id.*; *see also* Def. Ex. M (May 17, 2017 letter from Wells Fargo to Ogambas stating, "[W]e have not yet received all of the required documentation from you. Because you have not provided the required documentation, we are unable to offer you assistance options."); UMF 25 (undisputed Wells Fargo sent May 17 letter). Moreover, Wells Fargo's June 6[12] and July 3, 2017 denial letters make no reference to Mr. Ogamba's "refusal to sign," much less attribute the denial to the absence of Mr. Ogamba's signature alone. *See* Def. Exs. N & O. Rather, both letters state, "[i]f your mortgage has been or will be referred to foreclosure, that process may move forward now." Def. Exs. M & N. In sum, the record does not support Ogamba's argument that Wells Fargo never denied her March applications or denied them because they were not signed by Mr. Ogamba.

Alternatively, Ogamba argues Wells Fargo invited her to submit a renewed application in July, thus obligating Wells Fargo to review that application regardless of whether it documented a material change in financial circumstances that occurred after her March 2017 applications. Opp'n at 13, 16−17; Ogamba Decl. ¶ 19 ("In June 2017, Wells Fargo told me that it would consider me for a loan modification as long as I submitted the application with my ex-husband's signature on one portion for the application."). As this court recognized in its order on an earlier motion to dismiss, "courts have held that a loan servicer triggers its own obligation once it voluntarily undertakes to review a subsequent [modification] application." Prior Order, ECF No. 48, at 5 (citing *Amer v. Wells Fargo Bank NA*, No. 17-CV-03872-JCS, 2017 WL 4865564, at *9 (N.D. Cal. Oct. 27, 2017); *Curtis v. Nationstar Mortg. LLC*, No. 14-CV-05167-HRL, 2015 WL 4941554, at *2 (N.D. Cal. Aug. 19, 2015); *Vasquez v. Bank of Am., N.A.*, No. 13-CV-02902-JST, 2013 WL 6001924, at *9 (N.D. Cal. Nov. 12, 2013)). Each authority this court previously cited, and on which Ogamba relies here, was issued at the pleading stage; none are binding and, on this

---

[12] Both the 2017 and operative versions of section 2923.6(f) require a servicer to provide written notice identifying the reasons for the denial and information regarding the borrower's ability to appeal the denial. Cal. Civ. Code § 2923.6(f) (2017 & 2019). Ogamba's section 2923.6 claim relies exclusively on subdivisions (c) and (g) without addressing whether any other subdivision controls or was satisfied here. The court declines to address other provisions sua sponte.

12

record, none apply. Rather, on the record before the court, the court cannot find any such exception to section 2923.6(g)'s requirement applies here to save this claim.

In sum, there is no evidence Ogamba's July 2017 modification application documented a material change in financial circumstances and her dual-tracking claim therefore cannot succeed. On this claim, the motion is GRANTED.

B. HBOR Single Point of Contact Claim

Wells Fargo argues Ogamba lacks any evidence supporting her single point of contact claim. Mot. at 22. The court again agrees.

"Upon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact ["SPOC"] and provide to the borrower one or more direct means of communication with the single point of contact." Cal. Civ. Code § 2923.7(a) (2017).[13] As relevant here, a SPOC must "[h]av[e] access to individuals with the ability and authority to stop foreclosure proceedings when necessary." Cal. Civ. Code § 2923.7(b)(5) (2017 & 2019).

Ogamba's SPOC claim appears confined to her communications with Wells Fargo related to her July 2017 application. *See* FAC ¶ 48 (alleging her SPOC lacked authority to stop foreclosure proceedings when she submitted additional documents on July 18, 2017). As Wells Fargo argues, it did not violate section 2923.7(b)(5) because that provision requires a SPOC with authority to stop a foreclosure only "when necessary"; because the July 2017 application did not document a material change in financial circumstances, Wells Fargo was not obligated to evaluate that application or stop the foreclosure on the basis of that application. *See* Mot. at 22−23. Even if the court addresses the merits of the claim as Ogamba presents it, it cannot survive summary judgment.

It is undisputed that Wells Fargo appointed Nicholas Allen to serve as Ogamba's SPOC. UMF 66; Ogamba Decl. ¶ 21 ("An individual named Nicholas Allen was assigned as my

---

[13] The 2019 version is essentially the same: "When a borrower requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact." Cal. Civ. Code § 2923.7(a) (2019).

13

point of contact."). Ogamba testified she spoke to several Wells Fargo representatives. Ogamba Dep. at 149:17-150:4 (testifying her SPOCs "were changing like we change clothes" but agreeing all individuals were part of a team); Ogamba Decl. ¶¶ 22−23 ("I was often directed to speak to other individuals. [¶] One of the people I was often directed to speak with was Richard."). That Ms. Ogamba regularly spoke to more than one individual, standing alone, is of no consequence here, because as she appears to concede a SPOC may be "an individual or team of personnel each of whom has the ability and authority to perform the responsibilities described in [§ 2923.7(b)−(d)]." *Id.* § 2923.7(e).

Ogamba contends summary judgment is not warranted because there is a live dispute regarding whether the individual she claims she spoke to on July 18, 2017, had the requisite "authority to stop foreclosure proceedings when necessary." Opp'n at 21; *see Tuan Anh Le v. Bank of New York Mellon*, 152 F. Supp. 3d 1200, 1213 (N.D. Cal. 2015) (finding factual dispute precluding summary judgment as to "whether the SPOCs, or other [defendant] representatives who answered the hotline, provided accurate information"; noting plaintiff's declaration and defendant's internal notes suggested representative either lacked "access to current information" or lacked "the ability and authority to stop foreclosure proceedings when necessary"). Ogamba states the representative she spoke to on July 18, 2017, assured her if she "supplied the requested materials [that day] . . . , Wells Fargo would postpone the sale of [her] home"; she says she successfully faxed the documents to Wells Fargo that day, but her home was nonetheless sold the next day. Ogamba Decl. ¶¶ 27, 29−32. This, Ogamba contends, establishes a triable dispute regarding whether the unidentified Wells Fargo representative with whom she spoke had the requisite ability and authority to stop foreclosure proceedings.

Even if Wells Fargo were required to review Ogamba's latest application, which, as discussed above, it was not, this claim cannot survive summary judgment. Ogamba concedes she has not produced evidence beyond her declaration that the 4506-T tax form and non-occupancy bill were faxed to Wells Fargo on July 18. Resp. to UMF 37. Nor does she dispute that "[t]he only 4506-T [with her information] in her document production is dated July 7, not July 18." Resp. to UMF 38. She concedes there is no verification accompanying the fax cover sheet she produced,

14

although the cover sheet is dated July 18, 2017.  UMF 39; *see* Def. Ex. 6 at OGAMBA_000129.  She does not explain why this cover page lacks a verification report while most of the other cover pages she produced do have corresponding verification reports.

In *Tuan Anh Le*, addressing similar facts, the court sustained the defendant's objection to an exhibit containing "a fax cover sheet that states that a hardship letter is attached" because the exhibit showed only that plaintiff "faxed a cover sheet, which was one of two pages sent during the facsimile transmission" rather than "that Plaintiff submitted any documents."  152 F. Supp. 3d at 1220.  The same result is appropriate here.  The court SUSTAINS Wells Fargo's objection to Ogamba's claim she "faxed Wells Fargo representative Richard the requested documents [on December 18, 2017]" and "[t]he fax was reported as having been successfully transmitted."  Ogamba Decl. ¶¶ 29-30; Objs. at 2−3.

Because Ogamba's declaration provides the sole support for her SPOC claim and because the court sustains Wells Fargo's objection to that portion of the declaration, the claim cannot proceed and Wells Fargo is entitled to summary judgment.  Accordingly, the motion is GRANTED in this respect as well.

C.  Negligence & Wrongful Foreclosure Claims

Wells Fargo argues Ogamba's "derivative" negligence claim fails to the extent the HBOR claims fail.  Mot. at 23−24; Prior Order at 7−8 (holding negligence claim "incorporat[ing] the HBOR obligations underlying [the HBOR] claims . . . as the 'duties' Wells Fargo owed her" could proceed as a "derivative negligence claim").  Wells Fargo also argues it is entitled to summary judgment on Ogamba's wrongful foreclosure claim, which the court previously found "mirrors the negligence claim."  *See* Prior Order at 8.  In response, Ogamba argues her negligence claim remains viable because Wells Fargo violated the HBOR and thus breached its duties to her.  Opp'n at 24.  She does not directly address Wells Fargo's argument that her wrongful foreclosure claim also depends on survival of her HBOR claims.  *See id.* at 25−26.

Because the court finds Ogamba's HBOR claims cannot proceed, her negligence claims also cannot proceed.  Her wrongful foreclosure claim also falls along with her HBOR and negligence claims.  The motion is GRANTED as to the negligence and wrongful foreclosure claims.

## IV. CONCLUSION

Wells Fargo's motion for summary judgment is GRANTED. The clerk of the court is DIRECTED to enter judgment for defendant. Case CLOSED.

IT IS SO ORDERED.

DATED: August 26, 2019.

_____
UNITED STATES DISTRICT JUDGE